IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| XTONE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:25-cv-772 (RDA/WEF) |
| ) | |
| AMAZON.COM, INC., AMAZON WEB ) | |
| SERVICES, INC., AMAZON.COM SERVICES LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to Transfer Venue to the Western District of Washington ("the Motion") pursuant to 28 U.S.C. § 1404(a). Dkt. 53. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendants' Memorandum in Support (Dkts. 54, 55), Plaintiff Xtone Inc.'s Opposition (Dkt. 60), Plaintiff's Declarations in Opposition to the Motion (Dkts. 61, 62, 63), and Defendants' Reply (Dkt. 65), this Court GRANTS the Motion for the reasons that follow.

I. BACKGROUND

A. Factual Background

Plaintiff brings the instant action against Defendants for patent infringement. Plaintiff is a small, northern Virginia based tech corporation that was founded in 2004. Dkt. 1 ¶¶ 4, 5. Defendants are also corporations practicing in the tech industry, with offices in Arlington, Virginia. *Id.* ¶¶ 7, 8, 9. Plaintiff owns U.S. Patent Nos. 8,234,119; 8,401,859; 11,641,420; 11,657,406; 11,785,127; and 12,126,750 (collectively, the "Asserted Patents"). *Id.* ¶ 32. Plaintiff alleges that Defendants infringed on the Asserted Patents in their design, creation, and manufacture

1

of Amazon Alexa or Amazon Alexa+, Amazon's cloud-based voice service including the Alexa Voice Service, and any Amazon devices or third-party ("Alexa Built-in") devices that use or incorporate Amazon Alexa or Amazon Alexa+, including any devices or products that incorporate and/or use any version or release of the Alexa Voice Services ("AVS") Device Software Development Kit ("SDK") including all Alexa SDKs, such as the Alexa Auto SDK (collectively, the "Accused Products"). Dkt. 1 ¶ 40. Plaintiff seeks to stop Defendants' alleged unauthorized use of its Asserted Patents in the Accused Products.

B. Procedural Background

Plaintiff filed a Complaint on May 5, 2025. Dkt. 1. That same day, this case was assigned to U.S. District Judge Leonie M. Brinkema. On May 7, 2025, summons were issued as to Defendants (Dkt. 9), and, on May 8, 2025 (Dkt. 11), the summons were returned executed. A Consent Motion for Extension of Time to File Response/Reply was filed by Defendants on May 28, 2025. Dkt. 14. That same day, an Order approving the extension was issued. Dkt. 17. On June 30, 2025, this case was reassigned to this District Judge. On that same day, Defendants filed a Motion to Dismiss and an opening brief in support. Dkts. 32, 33. On July 14, 2025, Plaintiff filed its opposition to the Motion to Dismiss. Dkt. 44. On July 21, 2025, Defendants filed a reply in support of their Motion to Dismiss. Dkt. 47.

On August 7, 2025, Defendants filed a Motion to Transfer Case to the Western District of Washington. Dkt. 53. On September 3, 2025, Plaintiff filed an Opposition to the Motion to Transfer along with Declarations in support of its Opposition. Dkt. 60. On September 17, 2025, Defendants filed a Reply in support of their Motion to Transfer. Dkt. 65.

II. LEGAL STANDARDS

Transfer of venue is governed by 28 U.S.C. § 1404 which provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to

2

any other district or division where it might have been brought." Accordingly, there is a two-part inquiry when considering whether to transfer venue: "(1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Trend Micro Inc. v. Open Text, Inc.*, 2023 WL 6446333, at *5 (E.D. Va. Sept. 29, 2023) (internal citations omitted). The party seeking transfer generally "bears the burden of proving 'that the circumstances of the case are *strongly* in favor of transfer.'" *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (citation omitted, emphasis in original). However, "the ultimate decision [of whether to transfer a case] is committed to the sound discretion of the district court." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 994 (E.D. Va. 2011); *see also In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984).

### III. ANALYSIS

Defendants seek to transfer this case to the Western District of Washington ("WDWA"). Plaintiff, on the other hand, argues that the case should remain in this District. The Court will discuss each argument in turn.

#### A. Whether the Claims Might Have Been Brought in the WDWA

The first step in the § 1404(a) inquiry is to determine whether venue would have been proper in the WDWA. Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1392(b)(2). Importantly, "[a] [petitioner] is not required to establish that his chosen venue has the most substantial contacts to the dispute." *Power Paragon v. Precision Technology USA*, 605 F. Supp. 2d 722, 726 (E.D. Va. 2008) (citing *Nat'l Council on Comp. Ins., Inc. v. Caro & Graifman, P.C.*, 259 F. Supp. 2d 172, 177 (D. Conn. 2003)). "Rather, it is sufficient that a substantial part of the events occurred in that venue, even if a greater part of the events occurred elsewhere." *Id.* Further, as district

3

judges in this District have recognized, when analyzing venue, "a court should focus not only on the matters that are in dispute or that directly led to the filing of the action; instead, it should review 'the entire sequence of events underlying the claim.'" *Power Paragon v. Precision Technology USA*, 605 F. Supp. 2d 722, 726 (E.D. Va. 2008) (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)).

This case is an action for patent infringement. Any civil action for patent infringement may be brought in the judicial district where a defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business. *See* 28 U.S.C. § 1400(b). Here, both parties agree that venue is proper in the WDWA. Plaintiff's Opposition specifically asserts: "There is no dispute that venue is proper in both the Eastern District of Virginia (EDVA) and the Western District of Washington (WDWA), and this case could have been filed in either district." Dkt. 60 at 10. This is because, as Defendants assert, "Amazon has a regular and established place of business in the Western District of Washington – its longstanding Seattle headquarters." Dkt. 54 at 14 (citing Dkts. 54-11, 54-12, 54-9). Accordingly, venue is proper in the WDWA and, thus, the claims at issue could have been brought in the WDWA.

B. Whether Transfer is Appropriate

The second step of the § 1404(a) analysis considers whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum. To make such a determination, the Court typically considers: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice. *See Bascom Rsch., LLC v. Facebook, Inc.*, 2012 WL 12918407 at *1 (E.D. Va. Dec. 11, 2012) (citing *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010)). The Court discusses each of the factors below.

1. Plaintiff's Choice of Forum

A Plaintiff's choice of forum is typically entitled to "substantial weight," especially where the chosen forum is the plaintiff's home forum or bears a substantial relation to the cause of action. *See Heinz Kettle GMBH*, 750 F. Supp. at 667. However, the plaintiff's choice of forum is not entitled to substantial weight if the chosen forum is not the plaintiff's "home forum," and the cause of action bears little or no relation to the chosen forum. *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007) (*citing Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 743 (E.D. Va. 2003). Instead, "if there is little connection between the claims and [the chosen forum], that would militate against a plaintiff's chosen forum and weigh in favor of transfer to a venue with more substantial contacts." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 635 (E.D. Va. 2003); *see also Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 593 (E.D. Va. 1992) (explaining that, because "the cause of action is at best only tenuously related to this forum, plaintiffs' initial venue choice will not impede transfer if the relevant § 1404(a) factors point to another forum"). In this District, courts have held that the plaintiff's choice of forum is given minimal weight when a plaintiff is found to have a weak connection to the District. *See Bascom Rsch., LLC*, 2012 WL 12918407 at *1 (finding that the plaintiff's connection to the District was tenuous because the plaintiff has no facilities, operations, offices, or employees that are located in this District besides the principal and because relevant employees live outside of the District).

Here, Plaintiff asserts that this District is its home forum and argues that venue in this District is proper because: (1) it has been operating in this District for decades, (2) its corporate headquarters are here, and (3) its founders, executives, Board members, and employees are from this District. Dkt. 60 at 11. Defendants challenge each of these connections and the weight that they lend to the analysis.

First, Defendants assert that Plaintiff is a "non-practicing entity." Dkt. 54 at 10. Defendants note that the Complaint itself alleges that Plaintiff "*attempted* to compete with giants," suggesting that Plaintiff is no longer active. Dkt. 1 ¶ 4 (emphasis added). Defendants assert that Plaintiff's last product was released in 2013, which Plaintiff does not dispute. *Compare* Dkt. 54 at 10, *and* Dkt. 54-6, *with* Dkt. 60 at 10. The declarations submitted by Plaintiff also suggest that Plaintiff is no longer an active business. *See* Dkt. 61 (describing an "active board and executives" but no active business, as last business discussed is in 2007); Dkt. 62 (also describing an "active" Board of Directors, but describing business ventures in the past tense, "leased office space" in the past tense, and employees as being "still in the area," suggesting they no longer work for Plaintiff). The declarations do not list any current products, sales, or developments. The Opposition also suggests that Plaintiff is a non-practicing entity. Dkt. 60 at 7-9 (describing past milestones achieved and noting the connection Board members to the District). This evidence strongly supports Defendants' argument that Plaintiff is a non-practicing entity.

Plaintiff attempts to dispute its categorization as a non-practicing entity but does so, not by pointing to any business conducted in the District, but by arguing that Defendants' caselaw is distinguishable because it does not exist "solely to acquire patents to litigate and manufactur[e] residency in this District purely for litigation purposes." *Id.* at 16.[1] District judges in this District have previously recognized that "past presence" and "past issues" are not relevant to the Court's venue analysis, which depends on the conditions that "existed when suit was instituted." *Jaffe v. LSI Corp.*, 874 F. Supp. 2d 499, 503 (E.D. Va. 2012). Here, the conditions that existed when the suit was instituted are that Plaintiff does not currently operate in this District. Similarly, district judges in this District have held that designating Virginia as a plaintiff's principal place of business

---

[1] The Opposition also broadly suggests that "Xtone continues to operate" in the District, but those assertions come without citation to any evidence. Dkt. 60 at 12 n.6, 15.

and the location of principals within the District does not create a strong connection between this District and the underlying cause of action. *See CIVIX-DDI, LLC v. Loopnet, Inc.*, 2012 WL 3776688, at *3-4 (E.D. Va. Aug. 30, 2012); *see also Automated Tracking, Solutions, LLC v. Validfill, LLC*, 2015 WL 9025703, at *2 (E.D. Va. Dec. 15, 2015) (giving no deference to choice of forum where "it does not appear, and ATS does not challenge, that it currently designs, develops, manufactures, or sells any products in Virginia or elsewhere"). Accordingly, Plaintiff appears to be a non-practicing entity.

With respect to the location of Plaintiff's headquarters, Defendants note that the address is a residential address. The State Corporation Commission lists Plaintiff's address in Virginia as 8414 Martingdale Drive in McClean, Virginia and use that same address for all officers. Dkt. 54-5. The Google Maps search conducted by Defendants demonstrates that this address is a house that appears to be in a residential area. Dkt. 54-7. Plaintiff's Opposition does not address this assertion. Again, district judges in this District have discounted such connections where the address is simply the home address of a principal. *See CIVIX-DDI*, 2012 WL 3776688, at *3.[2]

Considering all of this, the Court agrees with Defendants. Although Plaintiff has been present in the District and in Virginia since its founding, Plaintiff no longer appears to be an active business in its industry. Like the circumstances in *Bascom*, Plaintiff seems to currently have no facilities, operations, offices, or employees. 2012 WL 12918407 at *1. Thus, as a non-practicing entity, Plaintiff's past ties to this District do not provide a strong tie now and, thus, do not entitle its choice of forum to substantial weight.

---

[2] Plaintiff concedes that the address is for a "home office." Dkt. 60 at 15 n.8. Plaintiff asserts that it has "adopted a decentralized structure since 2014" and cites the Declaration of Vishal Dhawan in support. *Id.* The Dhawan Declaration does not make any representations, however, regarding any decentralized structure in 2014 – it does not use the words decentralized or 2014. Dkt. 62. Nor does the other declaration submitted by Tim Price refer to a decentralized structure in 2014. Dkt. 61.

Accordingly, for the reasons stated above, this Court finds that Plaintiff's connection to the District is tenuous due to its lack of relevant business activity in the District, and thus holds that Plaintiff's choice will have minimal weight in the Court's analysis of venue in this case.

2. Convenience of the Parties

Courts in this District have found that in a patent case, "as a general rule, the preferred forum is that which is the center of the accused activity." *ThroughPuter, Inc v. Microsoft Corporation*, 2022 WL 874319, at *6 (E.D. Va. 2022) (quoting *Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001)) (internal quotation marks omitted). Further, "the nucleus of operative facts [in a patent case] forms at or near the 'center of the allegedly infringing activities,' primarily where the accused products were designed, developed, and manufactured." *Macronix Int'l Co. v. Spansion Inc.*, 2014 WL 934521, at *2 (E.D. Va. Mar. 10, 2014) (citing *Koh*, 250 F. Supp. 2d at 636).

Plaintiff's Complaint alleges patent infringement regarding the development of the Accused Products. *See generally* Dkt. 1. Defendants assert that the Accused Products were designed, developed, and manufactured in WDWA. Dkt. 54 at 13. Defendants further assert that the employees and documents related to the development of the Accused Products are all located on the West Coast, in WDWA or two other West Coast locations. Dkt. 55-1. Defendants assert that more than 2,000 engineers were involved in the development of the Accused Products and that more than 4,000 engineers are involved in the operation of the Accused Products and that they are located primarily on the West Coast. *Id.* None of the employees at Defendants' second headquarters in Arlington, Virginia ("HQ2") were involved in the research, design, or implementation of the Accused Products, which were all designed and developed before HQ2 even opened. *Id.* With respect to one of the specific products mentioned in the Complaint (Login with Amazon), Defendants provided a declaration establishing that none of the 136 engineers

8

responsible for that product performed work in Virginia, with the vast majority located in Seattle and all but one of the senior engineers located in Seattle. Dkt. 55-2. Moreover, Defendants assert that any hard-copy documents would be located in Seattle, Austin, or India. *Id.* Similarly, Defendants provided another declaration establishing that another Accused Product was implemented primarily by engineers in California and no employees in Virginia worked on the Accused Product. Dkt. 55-3. The declaration further asserts that documents would be accessible from Seattle or California. *Id.*

Based on the declarations submitted by Defendants, it appears that the vast majority of material witnesses and documents are located in WDWA. Dkts. 55-1, 55-2, 55-3. These declarations further support that no employees in Virginia were involved in the design or development of the Accused Products. *Id.* Defendants list specific senior level individuals involved in the development of the Accused Products and their locations, which are in WDWA, the West Coast, or India. *Id.* Thus, the nucleus of the alleged infringing activities is WDWA.

By contrast, Plaintiff relies on the existence of HQ2 in Virginia. Plaintiff notes that current employees in HQ2 support the operation of the Accused Products but does not explain the relevance of such employees to Plaintiff's theory of infringement. Dkt. 60 at 21. Plaintiff attempts to rely on a specific employee, Rob Pulciani, to support a connection between HQ2 and the development of the Accused Products. *Id.* Although publicity surrounding HQ2 announced that "Rob Pulciani, vice president for Alexa, will be relocating from Seattle to Northern Virginia," Dkt. 65-4, Defendants produced evidence that Pulciani left Amazon in 2021, before HQ2 opened in 2023, Dkt. 65-5. Plaintiff otherwise speculates as to the materiality of other employees at HQ2. Dkt. 60 at 16 (asserting "it is highly likely that similar employees with relevant knowledge of Alexa work in HQ2"). Plaintiff also points to Defendants' Boston office as having employees relevant to the Accused Products, specifically pointing to Rohit Prasad as a head scientist for

9

Alexa. *Id.* at 16-17. But Defendants clarify that Prasad was not involved in the aspects of Alexa that Plaintiff asserts infringe on its patents and so has no relevance to this suit. Dkt. 65 at 10 (citing Dkts. 65-7, 65-8). As district judges in this District have recognized, "a court can infer 'that witnesses involved in the design and manufacture of the accused product are material.'" *ThroughPuter, Inc. v. Microsoft Corp.*, 2022 WL 874319, at *12 (E.D. Va. Mar. 23, 2022). Here, the material witnesses with respect to the Accused Products are in WDWA or otherwise closer to WDWA on the West Coast.

Plaintiff attempts to counter this evidence that the WDWA is more convenient for the parties by pointing to its own witnesses and documents. Dkt. 60 at 17-18. But in doing so, Plaintiff points to only two witnesses – the "inventors of the Patents-in-Suit" – Price and Dhawan. *Id.* In his declaration, Price lists four other former executives associated with Plaintiff and states his "belief" as to where each one is located – only one of whom is located in the Washington, D.C. metropolitan area. Dkt. 61 ¶ 13 (two are located in Boston, Massachusetts and the other in an unidentified part of Alabama). In his declaration, Dhawan similarly identifies six former executives – some of whom overlap with those listed by Price – and states that Dhawan "understand[s]" (but does not appear to know) that three of those six are located in the Washington, D.C. metropolitan area. Dkt. 62 ¶ 13. But Plaintiff does not explain the relevance of these former executives to the infringement claims. Nor does Plaintiff suggest it has a large quantity of documents located in Virginia. The only building that has been identified in Virginia is a "home office." Dkt. 60 at 15 n.8. This does not suggest a large quantity of evidence that would be difficult to maneuver, especially when compared to the declarations from Defendants. Indeed, Price's declaration does not mention documentary evidence and Dhawan's declaration states only generally that "many of our documents are located here." Dkt. 62 ¶ 12.

In sum, Plaintiff has not quantified what witnesses or evidence may be in this District. By contrast, Defendants have put forward strong evidence regarding the magnitude of evidence and witnesses relevant to the alleged infringement that are located on the West Coast and, more specifically, in WDWA. *See ThroughPuter*, 2022 WL 873419, at *11 ("Therefore, the cost of obtaining witnesses in this case would be lower in the Western District of Washington because significantly more potential witnesses are located in that district and the cost of obtaining each of those witnesses is exacerbated by the significant distance between Richmond, Virginia and Washington state."). Plaintiff's reliance on former U.S. District Judge Liam O'Grady's decision in *Magula, Ltd. v. Amazon, Inc.*, 2020 WL 9536937 (E.D. Va. Apr. 9, 2020), is unpersuasive. Judge O'Grady rested his decision on the fact that "Amazon cannot in good faith represent to the Court that E.D. Va. is an undesirable or inconvenient location to operate and do business." *Id.* at *16. But that is not the relevant inquiry here, which focuses on the convenience to the parties to *litigate this case*. Considering that factor – rather than the general convenience of conducting business – Defendants have clearly demonstrated an inconvenience to litigating in this District as opposed to WDWA, and Plaintiff has not produced any evidence that suggests a comparative inconvenience to litigating in WDWA. Accordingly, this factor weighs in favor of transfer.

### 3. Convenience of Witnesses

The parties further disagree on which venue is most convenient for witnesses. Plaintiff asserts that venue in this District is more convenient for witnesses because of its employees and potential third-party witnesses reside in or near the District. Dkt. 60 at 6.

With respect to witnesses identified by Plaintiff in *this* District, only one appears to be material to the infringement claims: Dhawan. Dkt. 60 at 22. However, Dhawan has not indicated that traveling to WDWA would be inconvenient. Dkt. 62. Plaintiff also identifies Vinny Lal, who had knowledge of Plaintiff's client engagements. Dkt. 60 at 12. Presumably, Plaintiff would

11

intend to rely on Lal for evidence of damages, but the Court is left to infer that this would be the substance of his testimony, and the Court cannot assess the importance of such testimony where there are no facts regarding when he worked for Plaintiff. Although Plaintiff lists six other local witnesses, Plaintiff does not explain the importance of their testimony with respect to the infringement claims. *Id.* Thus, Plaintiff has identified only one material witness located in this District and has not established that this witness would be inconvenienced by transferring venue to WDWA.

Plaintiff also lists a number of witnesses whom it contends are central to its case and are located near this District (or at least closer to this District than WDWA). Of most relevance to the infringement claims is Price, who lives in Maryland. Dkt. 60 at 22; Dkt. 61. However, like Dhawan, Price has not indicated that travel to WDWA would be inconvenient. Dkt. 61.

As to third-party witnesses near this District, the "key witness" identified by Plaintiff is Manoj Sindhwani who worked for Plaintiff before becoming employed by Defendants. Dkt. 60 at 5. Plaintiff's argument here would be compelling if Sindhwani lived in this District – but he does not. Sindhwani lives in New York, beyond the subpoena power of this Court. *Id.* Plaintiff has not suggested that Sindhwani is amenable to testifying in this District as opposed to WDWA; thus, his location adds little to this analysis. *See Shenton v. Aerojet Rocketdyne, Inc.*, 2018 WL 2729234, at *7 (E.D. Va. May 21, 2018) (Novak, M.J.) (recognizing that "consideration of the non-Californian residents, Boley and Felix, cuts neither in favor nor against transfer to California, because . . . neither resides within the subpoena power of the courts in Plaintiff's or Aerojet's preferred forums"). Plaintiff also notes that Pulciani lives in the "Washington, DC area," but again this is of limited assistance in determining convenience where Plaintiff does not allege that Pulciani would be subject to the subpoena power of the Court or willing to testify. Dkt. 60 at 11. Similarly, Prasad, Bill Barton, and Michael Rozelsky are located in Boston, and Plaintiff has not

asserted that they would be willing to testify in this District but not WDWA where they are beyond the subpoena power of both courts. *Id.* at 11, 13. Phil Klein, a former executive with Plaintiff, is "understood" to live in Alabama – also beyond the subpoena power of the Court and of WDWA, and Plaintiff has not suggested that he would be willing to testify in one but not the other jurisdiction. *Id.* at 12. Likewise, Plaintiff's former President, Chris McAndrews, appears to reside in Maryland and another individual, associated with Cablevision, appears to reside in New York, but Plaintiff does not suggest that they would be willing to testify in one but not the other jurisdiction. *Id.* at 13. Thus, this list of third-party witnesses is of minimal value for purposes of considering the convenience of witnesses because they cannot be compelled to testify in either proposed jurisdiction, and Plaintiff has made no representations regarding willingness to testify in this District but not WDWA.

On the other hand, Defendants have identified 23 engineers who are Defendants' employees and could be compelled to appear as party witnesses who worked on designing or developing the Accused Products that are located in either WDWA or, more generally, on the West Coast. Dkts. 55-1, 55-2, 55-3. Furthermore, Defendants have identified "sixteen named inventors on prior art patents or applications cited on the face of the patents-in-suit located in the [WDWA]." Dkt. 54 at 17.[3] This weighs in favor of transfer of the case to WDWA. *See Bascom*, 2012 WL 12918407, at *2 (concluding that witness convenience and access weighed strongly in favor of transfer where "the defendant ha[d] represented that there are 68 non-party witnesses located in the [proposed transferee forum] who are inventors or authors of prior art references cited on the face of the patents-at-issue" while plaintiff had "failed to specifically identify more than a handful of witnesses located near the Eastern District of Virginia"); *see also SZ DJI Tech. Co. v. Bell*

---

[3] Defendants also note that 58 California-based inventors are named in the prior art, but again this is of minimal assistance where they are not subject to the subpoena power of either proposed forum.

13

*Textron Inc.*, 2023 WL 6541848, at *7 (E.D. Va. Oct. 6, 2023) (finding witness convenience and access weighed in favor of transfer "since a substantial number of material witnesses reside within the transferee venue" while only two patent prosecutors for the asserted patents were located in this District).

In short, Plaintiff identifies only two material employee witnesses located close to this District (Price and Dhawan) and neither gives any indication of inconvenience to travel to WDWA. On the other hand, Defendants identify more than twenty employees who could have material information that are located close to WDWA and another sixteen third-party witnesses who would only be subject to the subpoena power of the WDWA. Accordingly, this factor weighs in favor of Defendants.

4. Interest of Justice

The final "principal factor," the interest of justice, strongly favors transfer to the Western District of Washington. *Samsung*, 386 F. Supp. 2d at 716. The interest of justice "encompasses public interest factors aimed at 'systemic integrity and fairness.'" *Id.* at 721 (citation omitted). "Most prominent among the elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments." *Byerson*, 467 F. Supp. 2d at 635. The parties do not suggest that systemic integrity is an issue here.

With respect to issues of fairness, district judges in this District have previously noted that "docket conditions in the Eastern District of Virginia and Western District of Washington appear similar." *ThroughPuter*, 2022 WL 874319, at *14. Indeed, a review of the recent case management statistics from the Administrative Office of the Courts reveals that the WDWA has approximately 1,000 fewer cases than this District and tends to resolve motions slightly more quickly (in 6 months as opposed to 7 months), although this District generally moves cases to trial slightly more quickly. *See* U.S. District Court – Judicial Caseload Profile,

14

https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf (last visited Feb. 12, 2026). Thus, docket conditions remain similar. On the whole, considerations of fairness suggest that this case should be transferred to the WDWA as the locus of the infringing activities, witnesses, and documents appear located in the WDWA. Although Plaintiff states that it has "historical and current ties" to this District, it provides no analysis of how those ties relate specifically to this litigation. That lack of connection to this litigation also differentiates this case from the results reached by other district judges in this District in *Maglula* and *SoundClear Techs., LLC v. V. Suarez & Co.*, No. 1:24-cv-1283, Order, Dkt. 63 (E.D. Va Nov. 8, 2024).

\* \* \*

In short, a consideration of the relevant factors reveals that Plaintiff's choice of forum is entitled to minimal deference, and the remaining factors weigh in favor of transfer. Accordingly, the Motion will be granted.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, it is hereby ORDERED that the Motion to Transfer Venue to the Western District of Washington (Dkt. 53) is GRANTED; and it is

FURTHER ORDERED that this case is TRANSFERRED to the Western District of Washington; and it is

FURTHER ORDERED that the Motion to Dismiss (Dkt. 32) is DENIED without prejudice and may be renewed for consideration by the Western District of Washington.

It is SO ORDERED.

Alexandria, Virginia
February 19, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge